<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| WILLIAM DYKEMAN, | : | **Hon. Peter G. Sheridan** |
| Plaintiff, | : | Civil No. 12-4634 (PGS) |
| v. | : |  |
| ABU AHSAN, M.D., et al., | : | <u>OPINION</u> |
| Defendants. | : |  |

**APPEARANCES**:

    WILLIAM DYKEMAN, #792261C, Plaintiff <u>Pro Se</u>
    New Jersey State Prison
    P.O. Box 861
    Trenton, New Jersey  08625

<u>SHERIDAN</u>, <u>District Judge</u>:

Plaintiff William Dykeman, a prisoner at New Jersey State Prison, seeks to file a Complaint <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 28 U.S.C. § 1915.  This Court will grant <u>in</u> <u>forma</u> <u>pauperis</u> status to Plaintiff.  Having screened Dykeman's Complaint, as required by 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, this Court will dismiss the federal claims raised in the Complaint and decline to exercise supplemental jurisdiction.

**I.  BACKGROUND**

Plaintiff labeled his Complaint "Medical Malpractice Complaint Brought Under 42 U.S.C.A. § 1983."  (Dkt. 1 at 4.)  The defendants are Dr. Abu Ahsan and several John Does.  He asserts that "all medical malpractice and negligence occurred in New Jersey."  (<u>Id.</u>)  Dykeman alleges that in the late 1990's, he suffered a fall and injured his right hip.  He states that he

"arrived at this prison in 2005, and has had 4-6 x-rays on this hip, and . . . . the medical doctors at this prison have repeatedly told plaintiff that submissions for a consultation with an orthopedic doctor have been denied." (Id. at 6.) He asserts that, on the basis of x-rays, medical personnel at the prison diagnosed his condition as "chronic degenerative arthritis of the right hip." (Id. at 10.) Attached to the Complaint is a letter to Dykeman from Sharon Felton, Health Services Unit, Department of Corrections, dated September 22, 2009, responding to his correspondence pertaining to his attempt to obtain an MRI. (Dkt. 1-2 at 3.) The letter provides the following information concerning his medical records at the prison:

> Patient was last seen by the provider on June 12, 2009 who explained to Mr. Dykeman that he has chronic degenerative arthritis of the right hip. This was based on the x-rays taken of his pelvis (normal), right hip (advanced arthritis, no fracture) and left hip (mild arthritis, no fracture) and assessment. The provider submitted a prosthetics consult to be[] reviewed by the utilization management committee. The committee reviewed the case and advised the provider to consider supporting insoles first and then re-assess the patient. An MRI is not indicated at this time. Mr. Dykeman is scheduled to see the provider to discuss his options.

(Dkt. 1-2 at 3.)

Dykeman further asserts that "[e]very night he is awakened 5-10 times, from continual pain, and must shift positions," that he "can no longer run or exercise and [he] has great difficulty even walking," and that he is in "serious danger of developing other medical problems from no physical exercise due to his continually painful hip restricting proper exercise in harmony with nationally recognized standards." (Dkt. 1 at 12.) He maintains that "multiple requests for a proper 'M.R.I' have been rejected [and a]ll requests to see an orthopedic surgeon have been rejected. Dykeman needs surgery." (Id. at 7.) In addition, he alleges that "[a]n x-ray alone appears to be totally inadequate to make a proper diagnosis, and is not the accepted 'standard of care' in the medical community." (Id.)

Dykeman alleges that he appealed a final decision of the New Jersey Department of Corrections to the Appellate Division of the New Jersey Superior Court concerning the alleged denial of proper medical care for his hip.  The Appellate Division opinion dated May 28, 2010, in <u>Dykeman v. Dept. of Corrections</u>, Docket No. A-2137-08T1 sl. opinion (N.J. Super. Ct., App. Div. May 28, 2010), is attached to the Complaint.  (Dkt. 1-2 at 7-11.)  The Appellate Division rejected Dykeman's constitutional challenge to his medical care on the ground that "[t]he present record does not support a finding of an arbitrary withholding of medical care" where the record showed that he was referred to a physician and given three x-rays.  (<u>Id.</u> at 10.)  Dykeman asserts in the Complaint that he "respectfully disagrees with this opinion, which is contrary to the proper standard of care."  (Dkt. 1 at 8.)  Dykeman insists that "the D.O.C. staff, medical community, and their superiors, i.e., the defendant's, are "<u>deliberately indifferent</u> to this serious medical need, by not allowing a <u>proper diagnosis</u>, which, could possibly create an expense they do not want to incur in a bad economy."  (<u>Id.</u> at 9.)  He concludes:

> (24) Plaintiff has done everything reasonably possible to secure proper medical treatment for his seriously injured right hip, and defendant's have only offered pain medication and/or steroid injections which would only mask the problem and pose serious side effects.
>
> (25) Plaintiff submits he should have medical coverage that allows him to <u>properly</u> consult with an orthopedic doctor and receive <u>proper</u> treatment, which, at the very least, appears to be an M.R.I., possible arthroscopy, and probable surgery.  The prison medical defendant's have acted <u>deliberately indifferent</u> to this medical fact, as individual doctor's, collectively.

(Dkt. 1 at 13.)  For violation of his constitutional rights and New Jersey law, he seeks declaratory relief that he is "entitled to proper medical treatment including a proper M.R.I. so as to make a proper medical diagnosis," compensatory and punitive damages, attorneys fees and equitable relief.  (<u>Id.</u> at 16-20.)

## II.  LEGAL STANDARD

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a District Court to screen a complaint in a civil action in which a plaintiff is proceeding in forma pauperis or a prisoner is seeking redress against a government employee or entity, and to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. §§ 1915(e)(2)(B), 1915A.

To survive dismissal "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  Officials may not be held liable under § 1983 for the unconstitutional misconduct of their subordinates.  Id. at 677.  Rather, the facts set forth in the complaint must show that each defendant, through the person's own individual actions, has violated the plaintiff's constitutional rights.  Id.  This Court must disregard labels, conclusions, legal arguments, and naked assertions.  Id. at 678-81.  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief," and will be dismissed.  Id. at 678 (citations and internal quotation marks omitted); see also Bistrian v. Levy, __ F.3d __, 2012 WL 4335958 *8 (3d Cir. Sept. 24, 2012) ("The touchstone of the pleading standard is plausibility"); Fowler v. UPMC

Case 3:12-cv-04634-PGS-DEA   Document 2   Filed 10/25/12   Page 5 of 10 PageID: 108

Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009) ("a complaint must do *more than allege the plaintiff's entitlement to relief*. A complaint has to "show" such an entitlement with its facts") (emphasis supplied). The Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of the plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007).

### III.  DISCUSSION

Federal courts are courts of limited jurisdiction. See Mansfield, C. & L. M. Ry. Co. v. Swan, 111 U.S. 379, 383 (1884). "[T]hey have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." Bender v. Williamsport Area School Dist., 475 U.S. 534, 541 (1986). Section 1983 of Title 42 of the United States Code authorizes a person such as Plaintiff to seek redress for a violation of his federal civil rights by a person who was acting under color of state law. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Sample v. Diecks, 885 F.2d 1099, 1107 (3d Cir. 1989).

A.  Eighth Amendment

This Court reads the Complaint as attempting to assert a claim under the Eighth Amendment's prohibition against cruel and unusual punishment, which obligates prison authorities to provide medical care to inmates.  See Estelle v. Gamble, 429 U.S. 97, 103 (1976); Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  To state a claim under the Eighth Amendment, an inmate must satisfy an objective element and a subjective element.  See Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Specifically, inmates must "demonstrate (1) that the defendants were deliberately indifferent to their medical needs and (2) that those needs were serious."  Rouse, 182 F.3d at 197.  A medical need is serious where it "has been diagnosed by a physician as requiring treatment or is . . . so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (citations omitted).

"Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Iqbal, 556 U.S. at 676.[1]  Deliberate indifference includes "indifference ... manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  Erickson v. Pardus, 551 U.S. 89, 90 (2007) (quoting Estelle, 429 U.S. at 105) (footnotes and internal quotation marks omitted).  To establish deliberate indifference, a prisoner must show that the defendant was subjectively aware of the unmet serious

---

[1] Accord Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior").

medical need and failed to reasonably respond to that need. Farmer, 511 U.S. at 837; Natale, 318 F.3d at 582. "The knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001). Deliberate indifference may be found where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) intentionally delays necessary medical treatment based on a non-medical reason; or (3) deliberately prevents a prisoner from receiving needed medical treatment. See Rouse, 182 F.3d at 197.

      In this Complaint, Dykeman's allegations satisfy the objective element, as chronic degenerative arthritis of the hip may be considered a serious medical need. However, nothing alleged in or attached to the Complaint even insinuates that medical personnel disregarded Dykeman's arthritis. Dykeman received several x-rays over the course of time and, as a result of these x-rays, doctors diagnosed his condition as chronic degenerative arthritis. Doctors prescribed pain medication and steroid injections (which Dykeman refused), and a medical committee considered and determined that neither an M.R.I. nor a consultation with an orthopedic surgeon was medically warranted. Clearly, Dykeman is not satisfied with the diagnosis and treatment prescribed by prison medical personnel and he wants a "second opinion," as well as his preferred diagnostic test, i.e., an M.R.I. But whether an M.R.I., consultation with a surgeon, and hip replacement surgery are medically warranted are questions of medical judgment. "Mere disagreements between the prisoner and the treating physician over medical treatment do not rise to the level of 'deliberate indifference.'" Quinn v. Dietman, 413 Fed. App'x 419, 422

(3d Cir. 2011) (citing Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir.1987)).  Moreover, it is settled Eighth Amendment jurisprudence that "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Estelle, 429 U.S. at 106.

      Here, Dykeman fails to state facts insinuating that anyone deliberately refused to diagnose his hip pain, or refused to evaluate whether an M.R.I. was medically needed to diagnose his arthritis, or knowingly prevented him from receiving medically necessary treatment, or conspired to deny or delay medically necessary treatment for a non-medical reason.  His allegations that he had several x-rays and a committee considered whether an M.R.I. was needed for diagnostic purposes shows that officials have been monitoring his arthritis, and are consistent with the provision of appropriate medical attention.  Under these circumstances, Dykeman's allegations do not plausibly suggest a decision or a conspiracy to knowingly deny or delay medically warranted treatment for non-medical reasons.[2]  Accordingly, the Complaint has not "nudged [his] claims" of deliberate indifference "across the line from conceivable to plausible," Iqbal, 556 U.S. at 680 (citation and internal quotation marks omitted), and the claim for deliberate indifference to his degenerative arthritis of the hip does not state a claim under the Constitution.  This Court will dismiss the § 1983 deliberate indifference claim for failure to state a claim upon which relief may be granted.

---

    [2] Nor do Plaintiff's allegations show that the non-medical officials had reason to believe that prison doctors were obviously and intentionally mistreating Plaintiff or refusing to provide medical care for his arthritis.  See Spruill v. Gillis, 372 F. 3d 218,  236 (3d Cir. 2004).

A District Court generally grants leave to correct the deficiencies in a complaint by amendment.  See DelRio-Mocci v. Connolly Properties Inc., 672 F.3d 241, 251 (3d Cir. 2012); Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000).  However, in this case, where Dykeman's allegations are detailed and clearly show that the alleged wrongdoing does not rise to the level of deliberate indifference, this Court will not grant leave to amend because amendment would be futile.

B.  Supplemental Jurisdiction

"Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."   Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted).  Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3); Growth Horizons, Inc. v. Delaware County, Pennsylvania, 983 F.2d 1277, 1284-1285 (3d Cir. 1993).  In this case, the Court is dismissing every claim over which it had original subject matter jurisdiction at an early stage in the litigation and declines to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3).

## V.  CONCLUSION

Based on the foregoing, this Court will grant Plaintiff's application to proceed in forma pauperis, dismiss the federal claims raised in the Complaint, and decline to exercise supplemental jurisdiction.


                                                   *s/Peter G. Sheridan*
                                                   PETER G. SHERIDAN, U.S.D.J.

October 15, 2012