**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM DYKEMAN, | Civil Action No. 12-4634 (PGS) |
| Plaintiff, | |
| v. | OPINION |
| ABU AHSAN, et al., | |
| Defendants. | |

**APPEARANCES**:

> WILLIAM DYKEMAN, 532687/792261C
> New Jersey State Prison
> P.O. Box 861
> Trenton, NJ  08625
> Plaintiff Pro Se

**SHERIDAN, District Judge**:

In July 2012, William Dykeman, a prisoner incarcerated at New Jersey State Prison ("NJSP"), filed a Complaint labeled "Medical Malpractice Complaint Brought Under 42 U.S.C.A. § 1983" against Dr. Abu Ahsan and several John Does. (Compl., ECF No. 1 at 4.)  Upon screening the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, this Court dismissed the federal claims for failure to state a claim upon which relief may be granted and declined to exercise supplemental jurisdiction.  Presently before this Court are three motions filed by Dykeman:  motion to file within time and page length, motion to supplement the record, and motion for reconsideration of the Order dismissing the federal claims.  (Motions, ECF Nos. 6, 7, 11.)  For the reasons expressed in this Opinion, this Court will grant the motions and, after reconsideration, dismiss the Complaint (as supplemented) and decline supplemental jurisdiction.

## I. BACKGROUND

Dykeman alleged the following facts in his Complaint. (Compl., ECF No. 1.) In the late 1990's, he suffered a fall and injured his right hip. He "arrived at this prison in 2005, and has had 4-6 x-rays on this hip, and . . . . the medical doctors at this prison have repeatedly told plaintiff that submissions for a consultation with an orthopedic doctor have been denied." (*Id.* at p. 6.) Dykeman alleged that, after reviewing x-rays of his hip, Dr. Ahsan and John Doe defendants diagnosed his pain as chronic degenerative arthritis of the right hip. He asserted that defendants violated his rights by rejecting his requests for an MRI of the right hip and a consultation with an orthopedic surgeon. Dykeman alleged that he appealed the final decision of the New Jersey Department of Corrections denying his medical requests to the Appellate Division of the New Jersey Superior Court, which rejected his constitutional challenge to his medical care in an opinion dated May 28, 2010, on the ground that the record did not support the claim. *See Dykeman v. Dept. of Corrections*, No. A-2137-08T1 sl. opinion (N.J. Super. Ct., App. Div., May 28, 2010) (ECF No. 1-2 at pp. 7-11). In the complaint, Dykeman expressed his disagreement with the Appellate Division's opinion. Even though defendants diagnosed his condition and offered to treat it with pain medication and steroid injections, Dykeman insisted in the Complaint that the defendants were deliberately indifferent to his needs because they did not order an MRI in accordance with his requests, they did not authorize a consultation with an orthopedic surgeon in accordance with his requests, and they did not make an accurate or proper diagnosis. (Compl., ECF No. 1-2 at p. 9.) He sought declaratory relief that he is "entitled to proper medical treatment including a proper M.R.I. so as to make a proper medical diagnosis," compensatory and punitive damages, attorney fees and equitable relief. (Compl., ECF No. 1 at 16-20.)

2

In its Opinion, this Court construed the Complaint as attempting to assert a claim under the Eighth Amendment's prohibition against cruel and unusual punishment, which obligates prison authorities to provide medical care to inmates.  *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  This Court found that, while chronic degenerative arthritis of the hip may be considered a serious medical need, Dykeman's allegations did not show that Dr. Ahsan or the John Doe defendants were deliberately indifferent to his medical needs.  (Opinion, ECF No. 2 at pp. 7-8.)

Dykeman signed his motion for reconsideration on November 3, 2012, and handed his motion papers to prison officials for mailing to this Court on November 21, 2012.[1]  (Motion to file within time, Motion for Reconsideration, ECF Nos. 6 at 1, 7 at 3.)  In the motion to file within time and page length, he asserts that he received this Court's Order and Opinion on October 27, 2012, and, although he completed his motion for reconsideration within seven days, "[h]e had to wait for copying, and mailed papers immediately after receiving them back from the prison law library.  Additionally, if he had access to a word processor his [handwritten] brief would be about 20 pages."[2]  (Motion to file within time and page length, ECF No. 6 at 2.)  He maintains that "his complaint was improvidently dismissed for failure to state a claim."  (Brief, ECF No. 7 at 13.)  Dykeman thereafter filed a motion to supplement the record and a report of an orthopedic consultation on December 20, 2012.  (ECF Nos. 11, 12.)

---

[1] Dykeman filed a notice of appeal on approximately October 29, 2012.  (ECF No. 4.)

[2] Dykeman filed an 81-page handwritten brief in support of his motion to reconsider the dismissal of his federal claims.

## II.  DISCUSSION

A.  <u>Standard for Reconsideration</u>

Dykeman labeled his motion for reconsideration as a motion under Local Civil Rule 7.1(i.). But a postjudgment motion "will be considered a Rule 59(e) motion where it involves 'reconsideration of matters properly encompassed in a decision on the merits.'" *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174 (1989) (quoting *White v. New Hampshire Dept. of Employment Security*, 455 U.S. 445, 451 (1982)).

Rule 59(e) of the Federal Rules of Civil Procedure provides that a motion to "alter or amend a judgment" must be filed within 28 days of the entry of the judgment. "The scope of a motion for reconsideration . . . is extremely limited." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011). "Such motions are not to be used as an opportunity to relitigate the case; rather, they may be used only to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* "[A] proper Rule 59(e) motion . . . must rely on one of three grounds:  (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Wiest v. Lynch*, 710 F.3d 121, 128 (3d Cir. 2013) (quoting *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010)).

B.  <u>Analysis of Motions</u>

As stated above, a motion for reconsideration is timely if it is filed within 28 days of the entry of the judgment being challenged. Since this Court's Order of dismissal was entered on October 25, 2012, Dykeman handed his motion for reconsideration to prison officials for mailing to the Clerk on November 21, 2012, and November 21 is less than 28 days after October 25, the motion is timely. Fed. R. Civ. P. 59(e). This Court will therefore grant Dykeman's motion to

file his motion for reconsideration "as within time." (ECF No. 6.) This Court will also grant the motion to file as within page length and the motion to supplement the motion for reconsideration with Dykeman's certifications dated November 26, 2012, December 20, 2012, January 30, 2013, April 27, 2013, April 30, 2013, May 6, 2013, May 10, 2013, May 13, 2013, May 15, 2013, and May 21, 2013, and the Orthopedic Consultation Report from Ahmar Shakir, D.O., dated December 20, 2012.[3]  (ECF Nos. 11, 12.)

Dykeman argues in his motion for reconsideration that this Court overlooked certain facts and misunderstood his allegations. In an apparent attempt to correct this misunderstanding, Dykeman submitted an 81-page memorandum, numerous detailed certifications, and the Orthopedic Consultation Report dated December 20, 2012. In an abundance of caution, this Court will grant his motion for reconsideration, vacate the Order dismissing the complaint, consider Dykeman's submissions as supplements to his original complaint, and determine whether the complaint, as supplemented, states a claim of deliberate indifference to his serious medical needs in violation of the Eighth Amendment.

C.  Screening for Failure to State a Claim

(1) Factual Allegations in Complaint, as Supplemented

In addition to the facts alleged in the original complaint, Dykeman asserts the following facts in his numerous certifications and submissions, which this Court is considering as supplements to the complaint. He alleges that Dr. Shakir, D.O., ordered three additional x-rays of his hip, which were performed on December 20, 2012. Dr. Shakir allegedly discussed Dykeman's diagnosis, recommended treatment with anti-inflammatory medication and cortisone injections, and advised Dykeman that the MRI requested by Dykeman was not necessary. (ECF

---

[3] Dykeman's submissions are unnecessarily lengthy, repetitive and argumentative.

11 at 7-13.) Dykeman states that he expressed his opinion to Dr. Shakir that the right hip pain was due to "bone-on-bone contact" and "missing cartilage." *Id.*

Dykeman asserts that on January 30, 2013, and April 27, 2013, he was summoned to the medical department where a nurse reviewed a two page report by Dr. Shakir dated December 20, 2012, with him. (ECF 11 at 13-23.) Dykeman alleges that he asked the nurse to provide the written warnings and medical alerts from the manufacturer of the cortisone shot; the nurse allegedly told him that she didn't have such information but she offered to give him general information on cortisone shots, which he declined. *Id.* at p. 16. According to Dykeman, the report diagnoses Dykeman with advanced arthritis in the right hip, and under the subheading "plan," indicates that "corticosteroid injections offered and declined." (*Id.* at 19-23.) Dykeman alleges that the report inaccurately states that he was demanding an MRI and arthroscopy. *Id.* Nevertheless, Dykeman states that he "do[es] disagree with Dr. Shakir for very good reasons, and simply put, Dr. Shakir is in no position to make a proper diagnosis with only an x-ray . . ." *Id.* at 19. Dykeman insists that he told Dr. Shakir that he "believed a proper MRI might very well reveal that the 'bone on bone contact' that Dr. Shakir acknowledged, might very well be properly treated with a 'minimally invasive procedure,' even possibly during an arthroscopy." *Id.* at 21. Dykeman further asserts that he made several requests for a copy of Dr. Shakir's report and he received it on July 9, 2013. *Id.* at 41; ECF No. 12. Finally, Dykeman alleges that on May 20, 2013, he played basketball in the prison gym for 20 minutes and the next day he tried to lift weights, but he felt intense pain in his hip. *Id.* at 44-46.

The report of the Orthopedic Consultation Dykeman had with Dr. Shakir, D.O., states that x-ray examination reveals advanced degenerative changes in the right hip, bone on bone contact,

and osteophyte formation at the superior dome.   (Orthopedic Consultation, ECF No. 12 at 2-3.) The report states that Dr. Shakir diagnosed greater trochanteric bursitis and prescribed corticosteroid injections, which Dykeman declined.   (ECF No. 12.)   Dr. Shakir notes that Dykeman wanted an MRI and surgery, but Dr. Shakir

> explained to [Dykeman] in detail that [he] does not require any further workup. He has advanced arthritis in his right hip that is noncontributory to his pain.   His pain is localized to the greater trochanter and bursa which is outside of the hip joint itself.   The patient disagrees with this finding.   I have recommended that he make no further appointments at this clinic.   The patient will not be treated by me.

(ECF No. 12 at 2-3.)

In the 81-page memorandum accompanying Dykeman's reconsideration motion, he argues that prison officials were deliberately indifferent because (1) he did not receive foot cushioning inserts, proper footwear and an extra mattress; (2) the top medical authorities, including the medical directors of Weill Medical College at Cornell University and the Hospital for Special Surgery, "do not believe a proper diagnosis can be made without both an x-ray and an M.R.I.;" (3) his requests for a consultation with an orthopedic surgeon were denied; (4) Dykeman does not believe that his hip pain can be attributed to arthritis; (5) prison officials did not give him copies of his x-rays and medical reports; (6) a cortisone injection is not proper medical treatment to fix his hip and is a temporary fix with serious potential risks.   (Mem., ECF No. 7 at 20-58.)   He summarizes his argument as follows:   "Plaintiff complains he has a seriously injured right hip that requires more than a steroid injection.   And that failing to allow a proper diagnosis, ie, a proper consultation with an orthopedic surgeon – who[] will need an MRI to make a proper diagnosis – in and of itself, fully surpasses any 'mere disagreement' and is tantamount to prima facie 'deliberate indifference' in order to satisfy Rule 8(a)(2)."   *Id.* at 59.

(2) Standard for Failure to State a Claim

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 28 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) because Plaintiff is proceeding *in forma pauperis*.

"[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim[4], the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must

---

[4] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 Fed. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

8

allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

(3) Eighth Amendment

Federal courts are courts of limited jurisdiction. *See Mansfield, C. & L. M. Ry. Co. v. Swan*, 111 U.S. 379, 383 (1884). "[T]hey have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986). Section 1983 of Title 28 of the United States Code provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. To recover under 42 U.S.C. § 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

The Eighth Amendment's prohibition against cruel and unusual punishment obligates prison authorities to provide medical care to inmates. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). To state a claim under the Eighth Amendment, an inmate must satisfy an objective element and a subjective element. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Specifically, inmates must "demonstrate (1) that the defendants were deliberately indifferent to their medical needs and (2) that those needs were

9

serious." *Rouse*, 182 F.3d at 197. A medical need is serious where it "has been diagnosed by a physician as requiring treatment or is . . . so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth County Correctional Institution Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir. 1987) (citations omitted).

"Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Deliberate indifference includes "indifference ... manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Erickson v. Pardus*, 551 U.S. 89, 90 (2007) (quoting *Estelle*, 429 U.S. at 105) (footnotes and internal quotation marks omitted). To establish deliberate indifference, a prisoner must show that the defendant was subjectively aware of the unmet serious medical need and failed to reasonably respond to that need. *Farmer*, 511 U.S. at 837; *Natale*, 318 F.3d at 582. "The knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001). Deliberate indifference may be found where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) intentionally delays necessary medical treatment based on a non-medical reason; or (3) deliberately prevents a prisoner from receiving needed medical treatment. *See Rouse*, 182 F.3d at 197.

10

In this case, Dykeman's allegations satisfy the objective element, as bursitis and chronic degenerative arthritis of the hip may be considered serious medical needs. However, nothing alleged in or attached to the Complaint and various supplements suggests that medical personnel disregarded Dykeman's pain, diagnosis or treatment.[5] "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Giles v. Kearney,* 571 F.3d 318, 330 (3d Cir. 2009). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Positano v. Wetzel,* ___ Fed. App'x ___, 2013 WL 3481727 (3d Cir. July 8, 2013) (quoting *United States ex rel. Walker v. Fayette Cnty.,* 599 F.2d 573, 575 n.2 (3d Cir. 1979) (internal quotation marks omitted).

Dykeman received several x-rays over the course of time, most recently on December 20, 2012, and, as a result of these x-rays, doctors diagnosed bursitis and chronic degenerative arthritis. Dykeman's submissions show that doctors prescribed pain medication, anti-inflammatory medication, and steroid injections (which Dykeman refused). Dykeman's allegations clarify that Doctors Ahsan and Shakir evaluated Dykeman's claims that an MRI and consultation with an orthopedic surgeon were necessary, and determined that neither was medically necessary to diagnose or treat Dykeman's conditions. As is clear from Dykeman's allegations, medical personnel did not ignore his hip pain but consistently responded to his concerns and offered

---

[5] To the extent Dykeman claims that the failure to give him the manufacturer's warnings for prednisone shots (which he declined) violates the Eighth Amendment, this claim lacks merit because the "failure to . . . warn him of the effects of prednisone does not amount to deliberate indifference." *Frierson v. St. Francis Medical Center,* 2013 WL 2285162 *3 n.6 (3d Cir. May 24, 2013).

treatment. Clearly, Dykeman is not satisfied with the diagnosis and treatment prescribed by medical personnel and he wants a second opinion by an orthopedic surgeon, his preferred diagnostic test (MRI), foot cushioning inserts, and an extra mattress. Whether Dykeman's requests should be granted are questions of medical judgment, and it is settled that "[m]ere disagreements between the prisoner and the treating physician over medical treatment do not rise to the level of 'deliberate indifference.'" *Quinn v. Dietman*, 413 Fed. App'x 419, 422 (3d Cir. 2011) (citing *Boring v. Kozakiewicz*, 833 F.2d 468, 473 (3d Cir.1987)); *see also Baker v. Younkin,*, Fed. App'x ___, 2013 WL 3481724 *2 (3d Cir. July 3, 2013) (holding that prisoner's claim that he needed a humidifier, in addition to a bi-pap machine, for sleep apnea constitutes "disagreement with [the doctor's] medical assessment and does not establish and Eighth Amendment violation.")

Here, Dykeman fails to state facts suggesting that anyone refused to diagnose his hip pain, or refused to evaluate whether an MRI was medically needed to diagnose his condition, or knowingly prevented him from receiving medically necessary treatment, or conspired to deny or delay medically necessary treatment for a non-medical reason. His allegations that he had several x-rays and a committee considered whether an MRI was needed for diagnostic purposes show that officials have been monitoring his condition, and are consistent with the provision of medical attention. While the alleged failure to order a diagnostic MRI may, if true, conceivably rise to the level of medical malpractice, Dykeman does not allege facts suggesting that the doctors had a sufficiently culpable state of mind and, thus, he fails to state a claim for deliberate indifference. *See Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the

victim is a prisoner."); *Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001) (quoting *Rouse*, 182 F.3d at 197) ("In the context of a deliberate indifference claim based on failure to provide adequate medical treatment, '[i]t is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'")

To summarize, Dykeman's allegations, as supplemented by his numerous submissions, do not plausibly suggest a decision to knowingly deny or delay medically warranted treatment for non-medical reasons. While he may not have received the diagnostic test, specialist consultation, and treatment he desired, the "Eighth Amendment does not guarantee an inmate's medical treatment of his choice." *Colon-Montanez v. Pennsylvania Healthcare Service Staffs*, ___ Fed. App'x ___, 2013 WL 3481811 (3d Cir. June 27, 2013) (citing *Chance v. Armstrong,*, 143 F.3d 698, 703 (2d Cir. 1998)). Accordingly, the Complaint, as supplemented, has not "nudged [his] claims" of deliberate indifference "across the line from conceivable to plausible," *Iqbal*, 556 U.S. at 680 (citation and internal quotation marks omitted), and the claim for deliberate indifference to his hip pain does not state a claim under the Constitution. This Court will dismiss the § 1983 deliberate indifference claim for failure to state a claim upon which relief may be granted.

(4) Amendment

A District Court generally grants leave to correct the deficiencies in a complaint by amendment. *See DelRio-Mocci v. Connolly Properties Inc.*, 672 F.3d 241, 251 (3d Cir. 2012); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). However, in this case, Dykeman supplemented the allegations in his complaint after receiving notice that this Court found them legally deficient to show deliberate indifference. Given that Dykeman's submissions are

13

numerous, detailed, and clearly show that medical personnel were not deliberately indifferent, this Court finds that further amendment would be futile.

D.   Supplemental Jurisdiction

"Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted). Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *Growth Horizons, Inc. v. Delaware County, Pennsylvania*, 983 F.2d 1277, 1284-1285 (3d Cir. 1993). In this case, the Court is dismissing every claim over which it had original subject matter jurisdiction at an early stage in the litigation and declines to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3).

### III.   CONCLUSION

This Court grants Dykeman's motions and, after reconsideration, dismisses the federal claims and declines to exercise supplemental jurisdiction.

_____
PETER G. SHERIDAN, U.S.D.J.

DATED: August 22, 2013