UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| WILLIAM DYKEMAN | Civil Action No.: 12-cv-04634 (PGS) |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER |
| ABU AHSAN, et al. | |
| Defendant. | |

SHERIDAN, U.S.D.J.

This matter comes before this Court on Defendant's motion for summary judgment [ECF No. 94] and Plaintiff's motion for appointment of pro bono counsel. [ECF No. 95].

I.

*Facts and Procedural History*

Soon after entering prison, Plaintiff, a New Jersey state prisoner, was diagnosed with degenerative arthritis of his right hip. In July 2012, Plaintiff, proceeding pro se and in forma pauperis, filed a civil rights Complaint pursuant to 42 U.S.C. § 1983. Plaintiff alleges, in his original Complaint, that his Eighth Amendment rights were violated when prison officials failed to properly treat pain in his right hip. Specifically, Plaintiff alleges that prison officials acted with deliberate indifference when they failed to secure an extra mattress prescribed by Dr. Ahsan, a prison doctor, and failed to renew a prescription after it expired. Plaintiff also alleges that the prison failed to provide recommended shoes to alleviate pain.[1]

---

[1] Plaintiff originally brought claims against Abu Ahsan, UNDMJ, and the New Jersey Department of Corrections. Since then all Defendants, but Dr. Ahsan, were dismissed.

Initially, this Court screened the Complaint and sua sponte dismissed all claims for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Thereafter, Plaintiff moved for reconsideration and to supplement the record, and the District Court vacated its dismissal Order. After reconsidering the supplemented Complaint, the District Court concluded that Plaintiff had failed to state a claim and again dismissed the Complaint. Plaintiff appealed, and the United States Court of Appeals for the Third Circuit affirmed in part, vacated in part, and remanded, finding that the facts alleged by Plaintiff were sufficient to state a claim under the Eighth Amendment. *See Dykeman v. Ahsan*, 560 Fed. Appx. 129 (3d Cir. 2014). The Court held:

> Here, Dykeman alleged that in December 2008 Doctor Ahsan prescribed an extra mattress to alleviate discomfort at night. Dykeman asserted that prison officials never provided him with the mattress and that Doctor Ahsan did not renew the prescription after it expired. Additionally, Dykeman alleged in his complaint and supplement that he was prescribed cushioned shoes, but that, like the mattress, they were not provided. Dykeman's allegations concerning the cushioned shoes are not as clear as his allegations regarding the mattress, but it does appear that he alleged that he never received the prescribed footwear. Reading these allegations, Dykeman has stated Eighth Amendment claims that should not have been dismissed for failure to state a claim.

*Id.* at 132-133. After the decision, parties engaged in discovery.

Plaintiff was deposed on August 1.

Defendant moved for Summary Judgment to be granted for Plaintiff's failure to provide any evidence sufficient to state a prima facie case of Eight Amendment deliberate indifference. Oral argument was held via telephone conference on November 8, 2017. On that date, the Court requested that Defendant file a supplemental response to Plaintiff's interrogatory No. 12, which asked "Is there any reason you can provide as to why you would not renew this 2008 order [] for an extra mattress after it expired in 2009?" [ECF No. 103]. Defendant filed a supplemental response on November 14. [ECF No. 106]. He stated:

> In or about September of 2009, I was informed by the Department of Corrections, Health Services Unit, that requests for mattresses were processed through the Department of Corrections, not the medical department and that the Department of Corrections was assessing Plaintiff's request for an additional mattress. I had no authority over the decision to provide Plaintiff with an additional mattress.

*Facts relevant to the medical care of Plaintiff*

Plaintiff stated in his interrogatories that his hip injury was caused by a fall in the late 1990s when he was framing the second story of a construction project. (Def. Br. Ex. A). After the fall, Plaintiff received an x-ray that did not show a fracture, and he did not seek further treatment. (*Id.* Ex. B). Plaintiff testified that his pain returned shortly after being incarcerated, in 2005, due to inactivity. (*Id.*).

On November 15, 2005, Plaintiff was examined by Grace Malendez, M.D. and she reported chronic right hip pain. Dr. Malendez offered to provide Plaintiff pain medication, which he refused. (*Id.* Ex. C at 390). The x-ray showed degenerative joint disease. (*Id.* at 364). On January 9, 2007, Plaintiff saw Dr. Malendez again and he requested shoe insoles and a double mattress. She ordered "Arch Support/Insoles." (*Id.* at 361). Plaintiff was seen by Barbara Brown, RN, on May 7, 2007 and requested better shoes and a softer mattress. He was advised that a softer mattress was not possible per Department of Corrections (DOC.) (*Id.* at 358). A new x-ray on December 6, 2007 showed "[d]egenerative joint disease bilaterally of the hip joint slightly greater at the right hip compared to the left hip. No apparent fracture or dislocation." (*Id.* at 353). On May 22, 2008, Plaintiff was seen by James Brewin, APN who told him that "MRI [was] not warranted at this time for osteoarthritic and degenerative changes. Treatment is analgesia." (*Id.* at 341). Plaintiff was seen again by Mr. Brewin on June 10, 2008, when he requested medical shoes but was told that

they were not advised at that time. Mr. Brewin entered an order for arch support/insoles instead. (*Id.*)

Plaintiff first saw Defendant Abu Ahsan, M.D., on December 9, 2008. At the time he complained of chronic right hip pain and Defendant noting his diagnosis, planned to order a repeat hip x-ray, an extra mattress, and arch supports. The order stated: "Arch Supports/ Insoles," and "Other Medical Equipment." He specified that he was ordering an extra mattress in his notes. (*Id.* Ex. C at 334). On December 11, 2008, the repeat x-ray showed advanced arthritis but no evidence of a fracture. (*Id.* at 332). On February 19, 2009, Plaintiff was seen by Donique Ivery, APN, and he complained that he had not received an extra mattress and that he wanted medical boots. (*Id.* Ex. C at 253). Plaintiff was again seen by Defendant on June 12, 2009, to discuss his right hip condition. Defendant submitted a request for a prosthetic consultation and advised Plaintiff to return in two weeks time. (*Id.* at. 250). On July 21, 2009, Ivery informed Plaintiff that his request for a prosthetic consultation was denied. Ivery entered a request for an MRI at Plaintiff's request. (Def. Br. Ex. C at 234).

On September 22, 2009, Plaintiff received a letter from Sharon Felton, B.A., Health Services Unit, Division of Operations, regarding his right hip complaints and requested treatment.

The letter stated:

> This letter is in response to your correspondence pertaining to your attempts in obtaining treatment for your right hip. You are requesting a pair of well cushioned sneakers, an MRI and stated that you have an order for an extra mattress since December 2008 and you have not received it. I forwarded your letter for review and response to Elizabeth Topol, M.H.A., Statewide Ombudsman, University Correctional Health Care. Ms. Topol has informed me that she along with the Medical Director and Nurse Manager have reviewed your medical record. I have been advised me of the following:
>
> "Patient was last seen by the provider on June 12, 2009 who explained to Mr. Dykeman that he has <u>chronic degenerative arthritis of the right hip.</u> This was based on the x-rays taken of his pelvis (normal), <u>right hip (advanced arthritis, no fracture) and left hip (mild arthritis, no fracture) and assessment. The provider submitted a prosthetics consult to bee reviewed by the utilization management committee. The committee reviewed the case and advised the provider to consider supporting insoles first and then re-assess the patient. An MRI is not indicated at this time.</u> Mr. Dykeman is scheduled to see the provider to discuss his options.
>
> <u>Mr. Dykeman is correct; an order for an extra mattress was placed in December 2008. Mattress orders are processed through the DOC.</u> The nurse manager is looking into the reason this order was not completed. At this time, patient is advised to discuss his medical options with the provider to include a pain management treatment plan during his next scheduled visit."
>
> I hope that this letter has addressed your concerns.

(Def. Br. Ex. D) (emphasis in original provided to the Court).

Plaintiff saw Defendant again on December 16, 2009. Defendant explained to Plaintiff that the MRI and prosthetics were not indicated. He entered a new order for arch supports/insoles. (*Id.* Ex. at 228). On April 16, 2010, Plaintiff saw Defendant again and he indicated that he did not want any pain medications but that he did want to explore surgical option for his right hip short of total hip replacement. Defendant again ordered shoe insoles, requested an orthopedic evaluation and repeat x-ray. (*Id.* Ex. C at 216). On May 3, 2010, Defendant reviewed Plaintiff's repeat x-ray conducted on April 29, 2010, which showed a "[m]odest osteoarthritis of the right hip." (*Id.* Ex. C at 215). On July 26, 2011, Plaintiff saw Defendant, and requested "either padded shoes or MRI in preparation for his right hip replacement." A new MRI request was placed. (*Id.* at 196-197). On September 14, 2011, Ivey advised Plaintiff that his MRI request had been denied by the review committee and their recommended plan was for a steroid injection or anti-inflammatory medication. (*Id.* at 191).

5

On December 21, 2011, Plaintiff saw Barbara Brown, RN. He declined to take steroid injection or analgesic. Plaintiff again renewed his request for an MRI or a CAT scan but Brown advised him that his previous request had been rejected. (*Id.* at 172). On November 26, 2012, Plaintiff was seen by Defendant and complained of significant right hip pain occasionally. Defendant noted that Plaintiff was a candidate for hip replacement. (*Id*. at 144-45). On December 20, 2012, Plaintiff was seen in consultation by orthopedic surgeon, Ahmar Shakir, D.O. who noted: "[r]ight hip greater throchanteric bursitis. DJD [degenerative joint disease] is incidental and noncontributory and non-concordant with his symptomology." He further reported:

> It was explained to [plaintiff] in detail that the patient does not require any further workup. He had advanced arthritis in his right hip that is noncontributory to his pain. His pain is localized to the greater throchanter and bursa which is outside of the hip joint itself. The patient disagrees with this finding. I have recommended that he make no further appointments at this clinic. The patient will not be treated by me.

(*Id*. at 141). On May 15, 2013, Plaintiff was given a copy of the above orthopedic surgery consultation and reported that he did not want to review the report at the clinic because he needed time to "take it in." (*Id.* Ex. C. at 126).

On July 3, 2014, Plaintiff saw Denise Johnson with complaints of joint pain, stiffness and arthritis. Johnson explained to Plaintiff his diagnosis based on the result of multiple x-rays over the years. She also explained that the medical department does not write double mattress restrictions and that medical boots are reserved for foot problems. (*Id*. Ex. at 89).

On November 18, 2014, Plaintiff was seen in consultation by orthopedic surgeon, Scott Miller, M.D. who reported that although the MRI films were not available for his review, they were immaterial because:

> [b]ased on x-ray criteria alone, the patient had osteoarthritis of the hip. The arthritis is severe enough to warrant a total hip replacement. This would seem to be the only appropriate intervention since the patient is stating the medical management is not effective. Despite this being the only effective treatment that I could recommend, the patient wants to think about his options and would like to do some research as to the types of hip replacements. He can return to clinic on p.r.n. basis if he is more interested in learning about the surgical options.

(Def. Br. Ex. C at 53). At his deposition, Plaintiff testified that he is a practicing Jehovah's Witness and that his beliefs affect his treatment. (*Id.* Ex. B. T110:13-21). He also testified that because of his religious beliefs he would not accept blood transfusion under any circumstances. (*Id.* at T114:7-12). In his opposition, Plaintiff denies his alleged unwillingness to undergo surgery done and states that he only tried to find out how invasive it would be and other information specific to the procedure. (Opp. Br. at 1).

Also at his deposition, Plaintiff attested that Defendant was helpful and polite with him and tried to help with the mattress. (*Id.* at T84:19-25).

His deposition states the following:

> Dr. Ahsan was very cordial. He was never nasty or anything. But the main thing with Dr. Ahsan is that he was willing to help with the mattress, which I appreciated. He was able to get me x-rays that on at least two separate occasions we looked at them . . . And I think he got in trouble, to be honest with you, because he was deathly afraid of not renewing the thing or doing anything about the mattress.

(*Id.* at T84-85). When asked if Defendant ever refused to treat him Plaintiff stated, "No, he was never like that. . . but I think he refused to do what his job is, in a sense that, you know he was in a tough position." The conversation continued with Plaintiff acknowledging that there is a protocol in place, though it is not shared with the inmates. (*Id.* at T87:3-22).

As noted above, Defendant asserted in his answers to interrogatories that the request for a mattress was processed through the Department of Corrections and that the DOC was assessing

7

Plaintiff's request for an additional mattress. He had no authority over the decision. [ECF No. 106].

II.

First, the Court considers Plaintiff's motion to appoint Pro Bono Counsel on May 11, 2016. [ECF No. 64]. Plaintiff has previously filed applications for appointment of Pro Bono Counsel. His motion was denied on July 6, 2016. [ECF No. 67]. On March 8, 2017, Plaintiff was appointed Pro Bono counsel for the sole purpose of a settlement conference. [ECF No. 83]. In the present application, Plaintiff argues that he necessitates counsel because of his limited time and resources. He also argues that he will require aid in securing an expert and through the discovery process.

Federal law allows for a court, at its discretion, to appoint an attorney to represent any person unable to afford counsel. 28 U.S.C. § 1915 (2012); *see also Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002) (holding that § 1915 affords the district courts "broad discretion" to determine whether the appointment of counsel in civil litigation is appropriate). The appointment of counsel pursuant to §1915 may be made at any point in the litigation and may be made by the district court *sua sponte*. *Tabron v. Grace*, 6 F.3d 147, 156 (3d Cir. 1993). Indigent civil litigants have no statutory right to court-appointed counsel. *Id.*

When deciding whether to appoint *pro bono* counsel, courts must initially decide whether a plaintiff's claim has "some merit in fact and law." *Owens v. Armstrong*, No. 15-4911, 2016 WL 1117945, at *14 (D.N.J. Mar. 22, 2016) (quoting Tabron, 6 F.3d at 155). The United States Court of Appeals for the Third Circuit has offered a non-exhaustive list of considerations that the district court may consider when deciding whether to appoint *pro bono* counsel, including "(1) the plaintiff's ability to present [his] own case; (2) the complexity of the legal issues; [and] (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue

8

such investigation." *Id.* The court may also consider "(4) the amount the case will turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6) whether the plaintiff can attain and afford counsel on his own behalf." *Id.* A single factor is not determinative. *Id.*

First, the Court examines the threshold *Tabron* factor: does Plaintiff's claim have some merit in fact and law? 6 F.3d at 155. For the purposes of evaluating this factor, the Court assumes "solely for purposes of this [request]" that Plaintiff's case has "some arguable merit in fact and law." *Montgomery*, 294 F.3d at 499.

Next, the Court analyzes the additional *Tabron* factors. The first additional factor examines whether the plaintiff has the ability to present his case. *Tabron*, 6 F.3d at 156. The Third Circuit has noted that courts should consider such factors as the plaintiff's literacy, education, work experience, and prior litigation experience. *Id.* The plaintiff's ability to present his own case is perhaps the most significant *Tabron* factor. *Pinchak*, 294 F.3d at 501. Here, as evidenced by Plaintiff's filings in this case, and he has, to this point, litigated his claims competently.[2] Indeed, he successfully appealed dismissal of his claims to the Third Circuit. Plaintiff, therefore, despite his claims to the contrary, has shown he is capable of presenting his case. Consequently, this factor weighs against Plaintiff's request.

The second *Tabron* factor examines the complexity of the legal issues presented. If the law on a given issue is not clear, this factor will typically support the appointment of *pro bono* counsel. *Tabron*, 6 F.3d at 156. Here, the legal issues and factual circumstances surrounding Plaintiff's claims do not appear unusually complex. The Third Circuit has noted that the deliberate

---

[2] The Court notes that this is not the first, nor the only claim that Plaintiff has filed with the Federal Courts.

indifference standard used to analyze Eighth Amendment claims is not a complex legal issue. *Parham v. Johnson*, 126 F.3d 454, 459 (3d Cir. 1997). As such, "a lay person, like [the plaintiff-prisoner], should be able to comprehend what he has to prove." *Id*. Therefore, this factor also weighs against Plaintiff's request.

Third, the Court considers the degree of factual investigation necessary and the ability of the Plaintiff to pursue such investigation. *Tabron,* 6 F.3d at 156. Prisoners are limited in their investigatory ability and it "may be difficult for indigent plaintiffs to understand complex discovery rules." *Montgomery v. Pinchak*, 294 F.3d at 503. Here, although Plaintiff has limited resources as a prisoner, he has been able to collect various materials such as medical records and communications with the Department of Corrections. (See, e.g., ECF 47-1).

The fourth *Tabron* factor addresses credibility determinations. 6 F.3d at 156. If a case appears to be "*solely* a swearing contest" relying on "credibility determinations," this factor will weigh in favor of appointing *pro bono* counsel. *Woodham v. Sayre Borough Police Dep't*., 191 F.App'x 111, 116 (3d Cir. 2006) (emphasis added). At this point, it does not appear that this matter will be "solely a swearing contest." *Id.* at 116. Thus, this factor weighs against the appointment of counsel.

Fifth, the Court considers whether the case will require the testimony of an expert witness. *Tabron*, 6 F.3d at 156. Plaintiff presents this application for mainly this reason. Expert testimony in this case could hypothetically be necessary. *See*, e.g., *Pearson v. Prison Health Service, C.A.* No. 16-1140, 850 F.3d 526, 2017 U.S. App. LEXIS 4003, 2017 WL 892371, at *5 (3d Cir. March 7, 2017); *See also Lanigani*, 2017 U.S. Dist. LEXIS 45328 at *19.

Finally, the Court considers whether the plaintiff can retain and afford counsel. *Tabron*, 6 F.3d at 156-57. This factor is presumptively fulfilled when a plaintiff is granted permission to

proceed in forma pauperis. *Woodham*, 191 F.App'x at 116. Here, Plaintiff is proceeding in forma pauperis and, therefore, this factor weighs in favor of appointing pro bono counsel for Plaintiff. However, indigency, absent satisfaction of other *Tabron* factors, does not itself warrant the appointment of counsel. *See Christy v. Robinson*, 216 F.Supp. 2d 398, 410 (D.N.J. 2002).

Based on the above analysis, this Court finds most factors to weigh against appointment of pro bono counsel. Consequently, Plaintiff's motion is denied.

III.

Next, this Court review's Defendant's motion for summary judgment.

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co*., 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson,* 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.,* 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson,* 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier*

*Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to set forth specific facts showing that there is a genuine issue for trial"). Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48. If a court determines, after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor "that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 Fed. App'x. 222, 227 (3d Cir. 2007). As a preliminary matter, we note that courts must liberally construe pleadings that are filed pro se. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Here, Defendant raises a motion for summary judgment on the basis that Plaintiff has failed to set forth a prima facie case of Eight Amendment deliberate indifference against him. The Supreme Court has made clear the standard for claims alleging failure to provide medical treatment to prisoners is "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U. S. 97, 104 (1976). To state an inadequate medical care claim under the Eighth Amendment's proscription against cruel and unusual punishment, an inmate must allege two elements: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Estelle*, 429 U.S. at 106; *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

"A medical need is 'serious,' in satisfaction of the second prong of the *Estelle* test, if it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quoting *Pace v. Fauver*, 479 F.Supp.

456, 458 (D.N.J.1979), aff'd, 649 F.2d 860 (3d Cir. 1981)). Denial of or delay in treatment that causes unnecessary and wanton infliction of pain may also constitute a serious medical need. *Id.* (citing *Estelle*, 429 U.S. at 103).

The second element of the *Estelle* test is subjective, requiring "an inmate to show that prison officials acted with deliberate indifference to his serious medical need." *Holder v. Merline*, 2005 U.S. Dist. LEXIS 32237, *4 (D.N.J. Jun. 27, 2005) (citing *Natale*, 318 F.3d at 582) (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety).

A plaintiff may indicate deliberate indifference by establishing that the defendants intentionally denied or delayed medical care. *Positano v. Wetzel*, 529 Fed. Appx. 116, 119 (3d Cir. 2013). Nevertheless, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.* (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)). Further, conduct that constitutes negligence does not rise to the level of deliberate indifference; rather, deliberate indifference is a "reckless disregard of a known risk of harm." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). Additionally, an allegation of medical malpractice or simple negligence does not rise to the level of a constitutional violation. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). "Mere disagreement as to the proper medical treatment is also insufficient." *Id.* at 235 (internal citation omitted).

Courts have found deliberate indifference "in situations where there was 'objective evidence that [a] plaintiff had serious need for medical care,' and prison officials ignored that evidence[,] *Nicini v. Morra*, 212 F.3d 798, 815 n. 14 (3d Cir. 2000) [and] in situations where

13

'necessary medical treatment is delayed for non-medical reasons.' *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)[,] [cert. denied, 486 U.S. 1006, 108 S. Ct. 1731, 100 L. Ed. 2d 195 (1988)]." *Natale*, 318 F.3d at 582.

The issue in this matter is whether Dr. Ahsan showed deliberate indifference when he did not file a second prescription for a mattress or cushioned shoes.[3] From the facts provided, Dr. Ashan examined Plaintiff again in December, 2009. Rather than prescribing a mattress, Dr. Ashan recommended medication or a steroid injection. Mr. Dykeman refused same. This Court finds, based on the record provided by the parties, that the decision of whether a mattress should be issued to Plaintiff was not one that Defendant could have controlled. Defendant showed willingness to help Plaintiff by submitting the initial prescription for a mattress. He was then informed that the Department of Correction was handling the matter. By not issuing a new script for the mattress, Defendant did not act with deliberate indifference. He appears to have been waiting on a resolution by the DOC, whose employee had expressly said would look into the matter. Moreover, the Plaintiff was provided with alternative remedies to alleviate the pain, i.e. medications, hip replacement or steroid injection.[4] While it is not up to this Court to discern the most appropriate treatment, it remains that, given the circumstances in this matter, Defendant's failure to issue a new prescription for the mattress did not rise to the level of deliberate indifference

---

[3] Plaintiff does not appear to raise the issue of the therapeutic shoes in his opposition, though he mentioned the issue at oral argument. Nevertheless, it appears from discovery, and specifically from the letter sent to Plaintiff in 2009 that the training insoles were an appropriate course of treatment, and that shoes would be reconsidered in later reassessments. (Def. Br. Ex. D).

[4] It is unclear whether Plaintiff refused the hip replacement as a remedy. Evidently, a blood transfusion may occur, and it must be consented to prior to surgery, if significant blood loss occurs during the operation. Plaintiff believes that a blood transfusion violates the rules governing his religion (Jehovah's Witness), and he will not grant permission.

by Dr. Ashan as required for an Eight Amendment claim, specifically when alternate treatments like prescription medicines and steroid injections were refused by Mr. Dykeman.

For those reasons, Defendant's motion for summary judgment is granted.

ORDER

This matter is before the Court on Defendant's motion for summary judgment [ECF No. 94] and Plaintiff's motion for appointment of pro bono counsel. [ECF No. 95].; and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented, and for good cause shown, and for all of the foregoing reasons,

IT IS on this 28th day of November, 2017;

ORDERED that Plaintiff's motion for appointment of pro bono counsel [ECF No. 95] is DENIED; and it is further

ORDERED that Defendants' motion for summary judgment [ECF No. 94] is GRANTED. Since Abu Ahsan is the only remaining Defendant in this matter, the matter is DISMISSED with prejudice.

<u>*s/Peter G. Sheridan*</u>
PETER G. SHERIDAN, U.S.D.J.